UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Amica Mutual Insurance Company, | ) | |
| | ) | C/A No.: 8:10-cv-1143-GRA |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Freddie N. Edwards and Christi S. | ) | (Written Opinion) |
| Freeman, Individually and as Personal | ) | |
| Representative of the Estate of George C. | ) | |
| Freeman, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This case was filed as a declaratory judgment action and is now before the Court on Defendant Freddie N. Edwards's ("Edwards") and Plaintiff Amica Mutual Insurance Company's ("Amica") motions for summary judgment. (ECF Nos. 27 & 28.) For the following reasons, Edwards's Motion shall be DENIED, and Amica's Motion shall be GRANTED.

**Background**

Amica brought this case asking for a declaration that, under the homeowner's policy (the "Policy") it issued to Edwards, Amica has no duty to defend or indemnify Edwards in a civil suit brought by Defendant Christi Freeman ("Defendant Freeman") in South Carolina state court. The civil suit arose out of a shooting of Defendant Freeman's husband, George Freeman ("Freeman"), by Edwards on Edwards's property.

While hosting a poker game at his house, Edwards got into a disagreement with

Page 1 of 8

Freeman, who was one of his guests. According to Edwards, he went and retrieved his gun from his bedroom because he feared Freeman and Freeman's brother, who was also present at the poker game, would harm him. After retrieving his loaded gun, Edwards went outside to where his guests were standing by their cars. When Freeman saw Edwards, he fled from Edwards, running around Edwards's house and towards Edwards's backyard. Edwards, still holding the gun, followed Freeman. When Freeman reached Edwards's backyard, he attempted to climb over the backyard fence. When he realized he would not be able to get over the fence, he turned back towards Edwards and began running toward him, which was the only direction he could run to get out of the backyard. Thinking Freeman was running at him, Edwards stepped to his right, and—still holding the loaded gun in his right hand—clotheslined Freeman with his left arm, knocking Freeman to the ground. Freeman then said, "[Edwards], don't shoot me" and reached for Edwards's gun. The gun went off during their struggle, and Freeman died from the resulting gunshot wound. Immediately after Freeman was shot, Edwards walked back inside his house and instructed his son to call the police.

In 2006, Edwards was convicted of murder and of possession of a firearm during the commission of a violent crime. On October 24, 2008, Defendant Freeman, individually and as personal representative of George Freeman's Estate, brought a civil action in state court against Edwards, alleging wrongful death and survival causes of action. On March 1, 2010, the South Carolina Court of Appeals reversed Edwards's 2006 conviction and remanded for a new trial due to the trial judge's failure to give a jury

instruction on involuntary manslaughter.  *See Edwards v. South Carolina*, 2010-UP-173, (S.C. Ct. App. Mar. 1, 2010) (unpublished) (per curiam).

In May 2010, Amica, which had previously been defending Edwards in the civil case under a full reservation of its rights, filed the instant Declaratory Judgment action against Edwards and Defendant Freeman in this Court, and Edwards counterclaimed for breach of contract.  On December 13, 2010, Edwards and Amica each moved for summary judgment.

On January 24, 2011, this Court held oral argument on the case, after which it decided to hold the case in abeyance pending Edwards's re-trial.  On June 24, 2011, a second, properly instructed jury found Edwards guilty of murder and of possession of a firearm during the commission of a violent crime.  Because Edwards's re-trial has been completed, this case is ready for ruling.

Amica asks this Court to declare it does not have a duty to defend or indemnify Edwards in the underlying state civil case because Edwards's actions are excluded from coverage under the Policy's expected or intended injury exclusion.[1]

---

[1] Amica also argues the acts alleged in the complaint are not covered because (1) the acts alleged in the complaint are not accidents as that term is used in the Policy and defined by South Carolina law; (2) the acts alleged in the complaint are not accidents as that term is used in the Policy and defined by federal substantive law; (3) the Policy expressly excludes coverage for injuries arising out of physical abuse, which was the cause of Freeman's death; and (4) the doctrine of inferred intent applies and therefore Edwards's intentional actions before the shooting infer the existence of his intent to injure Freeman.  Because the Court finds Amica does not have a duty to defend or indemnify Defendant Edwards due to the intentional acts exclusion provision, it does not reach

The Policy provides liability coverage and the costs of defense "for damages because of bodily injury or property damage caused by an occurrence," (Pl's Mem. in Support of S.J. Mot., Ex. D, Policy p. 16, ECF No. 28-5 (emphasis omitted)), and defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful condition, which results, during the policy period, in: a. Bodily injury; or b. Property damage," (*id.* at 2, ¶ 8 (emphasis omitted)).  However, the Policy excludes coverage of any expected or intended injury, stating as follows:

> **E. Coverage E – Personal Liability** and **Coverage F – Medical Payments To Others**
>
> Coverages **E** and **F** do not apply to the following:
>
> **1. Expected Or Intended Injury**
>
> **Bodily injury** or **property damage** which is expected or intended by an **insured** even if the resulting **bodily injury** or **property damage**:
>
> a. Is of a different kind, quality, or degree than initially expected or intended; or
>
> b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

(*Id.* at 17–18, § II.E.1.)

### Standard of Review

Summary judgment is appropriate where the admissible evidence shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a

---

Amica's alternate arguments.

matter of law. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004) (citing Fed. R. Civ. P. 56(c) (2004)). A court must view the facts in the light most favorable to the party opposing summary judgment, and it may not make credibility determinations or weigh the evidence. *Id.* (citing *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002)). However, an issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* "Indeed, to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial." *Hill v. O'Brien*, No. 09-6823, 2010 WL 2748807, at *2 (4th Cir. July 12, 2010) (citing Fed. R. Civ. P. 56(e)(2); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)).

### Discussion

Under South Carolina law, insurance policies are subject to the general rules of contract construction, and the Court must give policy language its plain, ordinary, and popular meaning. *Dawsey*, 638 S.E.2d at 104 (citing *Century Indem. Co. v. Golden Hills Builders, Inc.*, 561 S.E.2d 355, 358 (S.C. 2002)). Insurance policy provisions "are to be liberally construed in favor of the insured and strictly construed against the company which prepared the policy." *Miller v. Fidelity-Phoenix Ins. Co.*, 231 S.E.2d 701, 702 (S.C. 1977). "Further, exclusions in an insurance policy are always construed most strongly against the insurer." *Am. Credit of Sumter, Inc. v. Nationwide Mut. Ins. Co.*,

663 S.E.2d 492, 495 (2008) (internal citation omitted).  However, even though "exclusions in a policy are construed against the insurer, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or a statutory prohibition." *Dawsey*, 638 S.E.2d at 104 (citing *B.L.G. Enters. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (1999)).  Moreover, the "court should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties."  *State Auto Prop. & Cas. Co. v. Brannon*, 426 S.E.2d 810, 811 (S.C. Ct. App. 1992).

The Policy contains an exclusion for coverage of expected or intended injury.  In *Miller*, the South Carolina Supreme Court outlined a two-step analysis for courts to use in determining the validity of an intentional act exclusion in a homeowner insurance contract: the act causing the loss must have been intentional and the consequences must have been intended.   231 S.E.2d at 701.  As a result of this case and its progeny, *see Vermont Mut. Ins. Co. v. Singleton*, 446 S.E.2d 417 (S.C. 1994) (applying the *Miller* test and holding that even though the insured acted intentionally, the exclusion did not apply because the insured had no intention of causing the harm), insurance companies amended their policies.  Noting that the policies in *Miller* and *Singleton* did not specifically exclude coverage for the unintentional consequences of intentional acts, insurance companies added specific language excluding coverage for the unexpected results of intentional acts by insureds.  In *Dawsey*, the South Carolina Court of Appeals determined that the *Miller* test did not apply where the insurance policy in question specifically

excluded coverage for injury "'resulting from intentional acts or directions of you or any insured. The expected or unexpected results o[f] these acts or directions are not covered.'" 638 S.E.2d at 104–05 (quoting the *Dawsey* insurance policy). Thus, under *Dawsey*, an insurance company can exclude coverage for the unintentional or unexpected results of an insured's intentional acts by using express language to that effect in the policy.

A jury found Edwards guilty of murder, and under South Carolina law, "once a person has been criminally convicted he is bound by that adjudication in a subsequent civil proceeding based on the same facts underlying the criminal conviction." *Doe v. Doe*, 551 S.E.2d 257, 258 (S.C. 2001). And to convict a defendant of murder, a jury must find that the defendant intended his actions. *See* S.C. Code. Ann. § 16-3-10 (2003) (defining murder as "the killing of any person with malice aforethought, either express or implied"); *State v. Johnson*, 352 S.E.2d 480, 481 (S.C. 1987) ("Murder is the unlawful killing of another with malice of forethought, express or implied."); *see also State v. Reese*, 633 S.E.2d 898, 902 (2006) ("Malice . . . . is the doing of a wrongful act intentionally and without just cause or excuse." (citing *Tate v. State*, 570 S.E.2d 522, 527 (S.C. 2002))), *overruled on other grounds by State v. Belcher*, 685 S.E.2d 802 (S.C. 2009); *State v. Kelsey*, 502 S.E.2d 63, 69 (S.C. 1998) (defining "malice" as a "wrongful intent to injure another").

As noted above, the Policy at issue expressly excludes coverage for injuries that were expected or intended by an insured even if the resulting bodily injury is of a

different kind, quality, or degree than intended. Edwards's murder conviction, which is based on the same underlying facts of this case, forecloses a finding that the actions giving rise to this claim were not intentional. And, insofar as Edwards claims the injury to Freeman was not intended, the Policy excludes coverage for Freeman's death as well because the Policy language clearly excludes coverage for injuries that are "of a different kind, quality, or degree than initially expected or intended." Thus, the Court finds that, as a matter of law, Amica has no duty to defend or indemnify Edwards in the civil suit brought by Defendant Freeman.

IT IS THEREFORE ORDERED that Edwards's Motion for Summary Judgment (ECF No. 27) be DENIED and Amica's Motion for Summary Judgment (ECF No. 28) be GRANTED.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

July 20, 2011
Anderson, South Carolina

### NOTICE OF RIGHT TO APPEAL

Pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, Defendants have the right to appeal this Order within **thirty (30)** days from the date of its entry. Failure to meet this deadline, as modified by Rule 4 of the Federal Rules of Appellate Procedure, **will waive the right to appeal.**